

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

James BROCK dba BROCK FARMS,

Plaintiff,

v.

NATIONWIDE AGRIBUSINESS INSURANCE NAIC, and DOES 1 through 50, inclusive,

Defendants.

Case No.: 3:24-cv-01165-JES-MMP

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**[ECF No. 38]**

Before the Court is a motion for summary judgment requiring the Court to determine whether a farmer's apparently largely inactive use of his property and equipment relieves the insurer of that property of its obligation to pay for claims made under a "Farm Policy." ECF No. 38. Asparagus farmer James Brock ("Plaintiff"), doing business as Brock Farms, contends that his use of the insured property to store asparagus seeds and repair farm equipment falls within the policy's coverage, and that his equipment was operable at the time his claims accrued. Nationwide Agribusiness Insurance NAIC ("Defendant"), argues that it should be relieved of its duties under their contract because Plaintiff's activities were

too attenuated from farming and because his equipment was derelict. Each party accuses the other of bad faith behavior throughout this dispute, and Defendant brings this motion for summary judgment. For reasons set forth below, the Court disagrees with Defendants that Plaintiff's claims fall outside the terms of their contract as a matter of law, but agrees that at least one property fixture falls outside of the policy's coverage due to inoperability. The Court does not find bad faith by either party in this dispute. Thus, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Defendant issued a Farm Package Policy ("the Policy") to Plaintiff that was effective from May 13, 2020, to May 13, 2021. ECF No. 46, Joint Statement of Undisputed Material Facts ("JSUMF") at 2. The policy applied to Plaintiff's business located at Third Street and Fern in Holtville, California ("the Property"), where Plaintiff grew asparagus and conducted other farming operations. *Id.*; Compl. ¶ 11. The Policy obligated Defendant to cover loss and damage of covered property there, up to $677,481 for the Packing House, and $15,534 for the farm shop. JSUMF at 2-3. The Policy defined "Covered Property" in relevant part as follows:

> a. Farm buildings and structures other than "dwellings" including attached sheds and fixtures used for "farming" purposes.
>
> Farm buildings and structures include… cold storage buildings… Coverage for farm buildings and structures includes:
> 1) Water pumps and equipment, including motors and outdoor equipment, pertaining to and used in the service of the building; and
> 2) Furniture, fixtures, machinery and equipment pertaining to the operation of the building, while located on or in the building or in the open within 100 feet of the building.

*Id.* at 3-4. The Policy defined farming as "the operation of an agriculture or aquaculture business." *Id.*

The Policy relieved Defendant of the obligation to pay for damages arising from "(1) wear and tear; (2) rust, corrosion … deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." *Id.* at 4. The Policy also excluded loss

2

3:24-cv-01165-JES-MMP

or damage arising from Petitioner's neglect to use reasonable means to preserve property. *Id.* at 5. The Policy explained that Defendant could examine Plaintiff under oath in the event of loss, and that Plaintiff's lack of cooperation in an examination would relieve Defendant of its duties under the Policy. *Id.* at 5-6. Finally, under the "Concealment, Misrepresentation, or Fraud," condition, the Policy states:

> This Coverage Form is void if any "insured" whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance regarding:
> a. This Coverage Form;
> b. The Covered Property;
> c. That "insureds" interest in the Covered Property
> d. A claim under this Coverage Form.

*Id.* at 6-7.

This action arises from two separate incidents of theft which Plaintiff reported on the Property: the first on January 23, 2021 ("first loss"), and the second on April 21, 2021 ("second loss"). Compl. ¶ 12. Plaintiff claimed loss or damage as a result of the thefts to the HVAC system, electrical components, and wiring from Plaintiff's packing house and storing yard. ECF No. 43-1 ("Opp'n.") at 6, 8. Plaintiff did not have operational security cameras at the time of the first loss and only had grainy security camera footage showing a person walking on the property following the second loss. ECF No. 38-1 ("Mot.") at 11, 12; ECF No. 38-4 ("Coughlon Decl.") ¶ 9. Regarding the second loss, Plaintiff told a representative for Defendant that thieves had climbed a utility pole and disconnected the wires from there. *Id.* at 12; Coughlon Decl. ¶ 16.

Defendant investigated the reported losses. Mot. at 11. Independent adjuster Larry Adamy inspected the Property on January 30, 2021, and took pictures of the Property. ECF No. 38-10. Defendant's expert George White, an engineer, inspected the property on March 5, 2021, and opined based on his review of the equipment that it was "highly unlikely" that the equipment was operational in the last four years, based on its apparent age. ECF No. 38-13 at 5. After the second loss, Defendant hired HVAC consultants who inspected the

3:24-cv-01165-JES-MMP

Property. Mot. at 13; Coughlon Decl. ¶ 19. The consultants examined the property and stated that the state of the electrical equipment and the allegedly cut pipes was inconsistent with copper theft. ECF No. 38-16 at 3-9. The consultants also reviewed the facility's power usage history and found that the electricity costs were significantly lower than the costs they would project if the HVAC system was in use. ECF No. 38-16 at 10. Defendant also retained an agricultural sciences expert, who evaluated the asparagus seeds Plaintiff was storing on the Property and concluded that the seeds were no longer viable. ECF No. 38-27 at 10-11, 22. Defendant's expert also spoke with an agent at the Imperial Irrigation District, who said that the District had removed the fuses from the utility poles, rather than the fuses being removed by thieves. Coughlon Decl. ¶ 23; ECF No. 38-16 ("Exh. K") at 272.

Plaintiff sat for an Examination Under Oath ("EUO") with Defendant's counsel regarding the losses in December of 2021. Mot. at 14. In his EUO, Plaintiff stated that the last year he used the cooling room for a harvest was 2015. ECF No. 38-20 at 15-16. Plaintiff testified that he closed his company in 2018, but continued to use the cold room to store seeds and other buildings on the property to make repairs on farming equipment. *Id.* at 17. Plaintiff also testified that he continued growing wheat off the property, in the desert, and that those farming operations involved the use of the Holtville property for equipment repairs. *Id.* at 17. Plaintiff stated that the cold room's cooling system, which relied on HVAC equipment, was always operational, but that it rarely, if ever, turned on because he had set it to turn on at 85 degrees due to the low value of the remaining seed. *Id.* at 13. Plaintiff stated that the last time he had personally known the HVAC equipment worked was March of 2018, when he lasted turned it on. *Id.* at 11. However, Plaintiff stated that the equipment was operational up until the time of the claimed losses, and that it would have turned on if a switch was flipped. *Id.* at 11-12.

On May 25, 2022, Defendant denied coverage of the losses. Coughlon Decl. ¶ 30. Defendant argues that Plaintiff's seed and farm equipment storage does not fall under the insurance contract's definition of farming, relieving Defendant of its duty to pay the claims.

3:24-cv-01165-JES-MMP

Mot. at 20.  Regarding the HVAC equipment and electrical components, Defendant argues that the property was not Covered Property under the Policy because neither was used in active operation. *Id.* Defendant also argues that policy's Wear and Tear Exclusion, Neglect Exclusion, Misrepresentation Condition of Coverage, and Cooperation Clause apply here and preclude its payment of these claims. *Id.* at 22-25.

Both parties raise claims that the other has acted in bad faith. Compl. at 15; Mot. at 27. Plaintiff brings a claim of tortious breach of the implied covenant of good faith and fair dealing and seeks punitive damages for alleged bad behavior. Compl. at 15. Defendant alleges that Plaintiff made material misrepresentations regarding the Property's operations and how the second loss occurred, relieving it of its duty to pay under the contracts Concealment Misrepresentation or Fraud exception. Mot. at 27.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of establishing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the nonmoving party cannot rest on the mere allegations or denials of its pleading. *Id.* at 322 n.3. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers

3:24-cv-01165-JES-MMP

to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The nonmoving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citations omitted).

## III.   DISCUSSION

Defendant moves for summary judgment on the basis that (1) Plaintiff's use of the Property at the time of the losses did not meet the contractual definition of farming; (2) the damaged property was so worn that it was valueless; (3) Plaintiff failed to act to prevent the second loss; and (4) Plaintiff made bad faith misrepresentations and failed to cooperate. Mot. at 8-9. Defendant further argues that Plaintiff's bad faith claim fails as a matter of law, and that therefore Plaintiff's punitive damages claim must be dismissed. *Id.* Plaintiff disagrees, arguing that the parties' differing characterizations of the facts of the case constitute a genuine issue for trial. Opp'n. at 12. The Court examines each of these arguments below.

### A. Principles of Contract Interpretation

"Insurance policies are contracts to which ordinary rules of contractual interpretation apply." *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal. App. 4th 21, 21 (1998). Contract interpretation, as a question of law, is often amenable to summary judgment, although '[s]ummary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract.'" *Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1150 (N.D. Cal. 2018) (quoting *United Pac. Ins. Co. v. Kilroy Indus.*, 608 F. Supp. 847, 850 (C.D. Cal. 1985)).

"The primary aim in interpreting an insurance contract is to give effect to the mutual intention of the parties at the time of contracting." *Houston Cas. Co. v. Etco Homes, Inc.*,

777 F. Supp. 3d 1112, 1120 (C.D. Cal. 2025). "The court must look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Perez- Encinas v. Amerus Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006).  Language is ambiguous when "it is capable of two or more constructions, both of which are reasonable." *Id.* "Multiple or broad meanings do not necessarily create ambiguity," because a contract can use a broad word "for that very reason—its breadth—to achieve a broad purpose." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 875 (1993).

When insurance contract language is ambiguous, courts are to resolve the ambiguity "by looking to the reasonable expectations of a reasonable insured.*" In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 926 (9th Cir. 2000) (quoting *Bay Cities Paving,* 5 Cal. 4th at 875). If the term is still ambiguous after looking to the expectations of a reasonable insured, "it is construed against the party who caused the ambiguity to exist," which is typically the insurer as the drafter of the contract. *Id.* California's Supreme Court has made clear that courts should construe contracts made under the laws of its state broadly and in favor of coverage where ambiguity exists. *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995) (explaining that courts should "generally interpret the coverage clauses of insurance policies broadly, [in order to protect] the objectively reasonable expectations of the insured."); *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990) ("Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage.") However, courts "will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving*, 5 Cal. 4th 854 at 867.

### B. Operability and Scope of Coverage

Defendant argues that it is entitled to summary judgment on the basis that Plaintiff's losses fell outside the contract's definition of covered property. Mot. at 20-21. Defendant argues that the contract only covers the HVAC and electrical components to the extent that they were used for farming operations, and that the evidence produced shows both were

3:24-cv-01165-JES-MMP

outside the scope of coverage because they were inoperable. *Id.* at 20-21. Defendant also argues more broadly that neither system could be used for farming operations because Plaintiff's business closed in 2018, after which he used the property to store non-viable seeds. *Id.* at 21-22. Plaintiff argues that the losses still fall within the terms of the agreement because he continued to use the property for farming operations. Opp'n. at 14. Plaintiff asserts that the expert reports and evidence corroborate his use of the property for agricultural purposes. *Id.* The Court addresses each argument below.

**1. Coverage Definitions**

The Court first addresses the broader dispute between the parties regarding whether the contract's definition of farming operations forecloses coverage of the claimed HVAC and electrical losses after Plaintiff closed his business and used the Property for storage and repairs. *See* Mot. at 21-22; Opp'n. at 14.

Defendant argues that the contract terms could not be understood to cover the HVAC and electrical systems because Plaintiff had stopped "active farming" when his business closed in 2018. Mot. at 21. In the same vein, Defendant points out that Plaintiff's use of the Property for seed storage cannot be understood as farming because its expert opined that the stored seeds were no longer viable. Mot. at 21; ECF No. 38-27 at 22.

Plaintiff argues that the evidence reflects that he used the Property as "an agricultural shop" covered by the contract, albeit less resource intensive than his previous business. Opp'n. at 14. The parties agree that Plaintiff was storing bags of asparagus seed in structures created for agricultural purposes at the Property. ECF No. 39 at 16. Plaintiff also stated in his EOU, and Defendant does not contest, that he continued to use the Property to repair equipment for his farming operations up until the time of the losses. ECF No. 38-20 at 17.

To determine whether Plaintiff's activities necessarily fall outside the contract's terms, the Court first looks to the contract's plain language. The relevant section defining coverage states that the Policy covers "[f]arm buildings and structures" used for "'farming' purposes." ECF No. 38-8 at 7. The contract goes on to define farming as "the operation of

3:24-cv-01165-JES-MMP

an agriculture […] enterprise." ECF No. 38-9 at 5. The contract distinguishes farm buildings and structures from dwellings, and, in a section entitled "PROPERTY NOT COVERED," excludes coverage of land, water, foundations, pilings, excavations, plastic exteriors of greenhouses, and irrigation equipment. ECF No. 38-8 at 27-28. However, outside of these exclusions, the contract appears to take a broad view of farming: it includes a list of potential types of farm buildings and structures but indicates that the list is non-exhaustive, covers building materials and supplies, and allows for coverage of all "furniture, fixtures, machinery and equipment pertaining to the operation of the building, while located on or in the building or in the open within 100 feet of the building." ECF No. 38-8 at 27.

As Plaintiff correctly points out, the term "active farming" appears nowhere in the contract. Opp'n. at 7. The coverage section of the contract does not state or intimate that the term "operation of an agricultural […] enterprise" depends on the functionality, viability, or profitability of that operation. *See* ECF No. 38-9 at 5. Nor does a common sense understanding of the term foreclose the possibility that ancillary tasks conducted by a farmer could reasonably be considered agriculture. *See Farmer's Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 762-63 (1949) (holding that both primary agriculture, meaning "cultivation and tillage of the soil, dairying, etc.," and secondary agriculture which "includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations," qualified as agriculture.) The term "operation of an agricultural […] enterprise," which defines farm building and equipment coverage in the contract, is thus ambiguous, because it can reasonably be construed either narrowly, to mean the functioning of an active farming business on the property, or broadly, to mean the entirety of operations for which a farmer might use land subject to such a policy. *See Perez-Encinas,* 468 F. Supp. 2d at 1133.

Because the term is ambiguous, the Court looks next to the reasonable expectation of the insured. *See K F Dairies*, 224 F.3d at 926. Plaintiff had a reasonable expectation that

9

3:24-cv-01165-JES-MMP

Defendant would cover the property in question when he enrolled in the Policy and made his insurance payments, especially considering that, in both parties' versions of events, the state of the Property did not meaningfully change between the beginning of the operative policy and the losses. *See* Opp'n. at 7. If there were any doubt as to reasonable expectations of the insured, the final tie-breaker of insurance contract interpretation would also weigh against Defendant as the drafter of the contract and in favor of coverage. *See Montrose Chem.*, 10 Cal. 4th at 667. Defendant thus has not met its burden to show that Plaintiff cannot prove the losses were covered by the policy as a matter of law. *See Celotex*, 477 U.S. at 323. The motion for summary judgment on the basis that neither the HVAC nor electrical system were covered due to Plaintiff's use of the property at the time of the losses is therefore **DENIED**.

## 2. Operability of the HVAC and Electrical Systems

Defendant also argues that the HVAC and electrical components were no longer covered by the contract because they were no longer used for farming operations due to their apparent state of disrepair. Mot. at 20-21. Plaintiff disagrees, arguing that the HVAC and electrical systems were fully utilized for farming operations. Opp'n. at 14. The Court finds that a dispute of material fact exists as to the Policy's coverage of the electrical system, but that no dispute of material fact exists as to the Policy's coverage of the HVAC system.

Defendant argues that "it is clear that coverage for the copper HVAC and electrical components applies only to the extent they were used for farming operations." Mot. at 20. As explained above, the Court does not find that Defendant's interpretation of the coverage terms as excluding Plaintiff's use of the farm as a repair shop and seed storage site controls. Thus, to be entitled to summary judgment based on coverage terms for the HVAC and electrical systems, Defendant must show that there is no dispute of material fact as to whether the HVAC and electrical systems were covered under either its definition or Plaintiff's definition of agricultural enterprises. *See Celotex*, 477 U.S. at 323.

Regarding the electrical systems, Defendant argues that the electricity use levels for the property have been flat since 2018. Mot. at 20-21. Viewing the evidence in the light most favorable to Plaintiff, this usage level does not contradict Plaintiff's claimed use of the property for shop and storage operations. *See* ECF No. 38-20 at 14. A reasonable jury could credit Plaintiff's testimony and view the evidence that he continued to pay electrical bills on the property as corroborating Plaintiff's proffered use of the property as an agricultural shop. ECF No. 38-16 at 10; Opp'n. at 14. Under the contract's definitions, these uses do not fall outside of coverage as a matter of law as explained above. Defendant has therefore not shown that flat electricity levels negate an element of Plaintiff's claims, and is not entitled to summary judgment regarding coverage for the electrical system. *See Celotex*, 477 U.S. at 322–23.

Regarding the HVAC system, Defendant argues that the system does not fall under the terms of the contract because Defendant's evidence shows that the system has not been operable for years. Mot. at 20. Defendant's engineer expert inspected and photographed the HVAC system, and opined that the equipment had not been in use for more than ten years. ECF No. 38-13 at 5. Defendant also hired an HVAC consultant who also gave the opinion that the equipment was not operational after inspecting the property and viewing the flat electricity use records. ECF No. 38-16 at 10. Plaintiff disputed this assertion in his sworn EOU, stating that HVAC system was serviceable and would have worked if turned on at the time of the losses. ECF No. 38-20 at 11-13. He stated that the system was set to only come on in very high temperatures due to the low value of the remaining seed. *Id.* at 15. Defendant accurately points out that Plaintiff stated that the last time he "personally knew" that the HVAC was working was in March of 2018. *See* Reply at 4; ECF No. 38-20 at 11-13. In that answer, Plaintiff went on to say that the equipment did work and would have turned on at the time of the loss. ECF No. 38-20 at 11-13.

The direct evidence offered by Defendant shows that the HVAC system was not operable at the time of the losses, and thus fell outside the policy's coverage of "attached [] fixtures used for 'farming' purposes" used under both its definition and Plaintiff's

definition of farming. *See* JSUMF at 3-4. Plaintiff has not produced any evidence to contradict this point, and relies solely on his statement in his EUO that the HVAC would have worked if turned on. *See generally,* Opp'n.; ECF No. 38-20 at 10-13. However, in that same statement, Plaintiff said, "For sure, the last time that I personally know that the thing was working [] was, I think, the 22nd, 21st, 22n[d] of March 17 of 2018." ECF No. 38-20 at 11. Considering Plaintiff's EOU statements together, in the absence of any other evidence indicating a basis for Plaintiff's assertion, the Court finds Plaintiff's statement that the HVAC would have turned on to be speculative and self-serving. *See id*.; ECF No. 38-13 at 5; ECF No. 38-16 at 10. At the summary judgement stage, speculative and conclusory evidence alone does not create a triable issue of fact. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). Further, while the Court is required to assume the truth of Plaintiff's direct evidence where it contradicts that of Defendant, a mere scintilla of evidence in support of his position does not suffice to show a dispute of material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Because Plaintiff has not shown competent evidence to refute Defendant's showing that the HVAC was inoperable, he has not shown that there is a genuine issue for trial regarding the system falling within the Policy's coverage even under an expansive definition of farming. *See Triton Energy Corp.,* 68 F.3d at 1221–22; JSUMF at 3-4 (defining covered property as items "used for 'farming' purposes."). The motion for summary judgment on the basis that the HVAC system fell outside the contract's coverage is therefore **GRANTED**.

### C. Wear and Tear

Next, Defendant argues that its denial of coverage for the HVAC equipment was proper under the contract's wear and tear exclusion. Mot. at 22. Because the Court grants summary judgment for Defendant on the basis that the HVAC system falls outside the policy's coverage, the Court **DENIES AS MOOT** Defendant's argument regarding the wear and tear exception.

3:24-cv-01165-JES-MMP

## D. Neglect

Nationwide argues that it is not obligated to cover property lost in the second theft because Plaintiff did not take additional security measures to protect his property after the first theft. ECF No. 38 at 23. Defendant suggests that appropriate steps may have been to "install an alarm system, hire a night watchman, or have guard dogs on site." *Id.* However, Plaintiff states that he had operable cameras and had contacted law enforcement about increasing patrol of the area. ECF No. 43 at 15. Whether these measures sufficed to meet Plaintiff's duties under the contract is a disputed issue of material fact to be determined by a jury. *See Fontana*, 262 F.3d 876; *Triton Energy Corp.,* 68 F.3d at 1221–22. The Court **DENIES** the motion for summary judgment on the basis of the neglect exception.

## E. Material Misrepresentations

Defendant argues that Plaintiff has made plainly contradictory statements regarding the operability of the HVAC system and the wire theft in the second loss which relieve it of its obligation to pay under the "Concealment, Misrepresentation, or Fraud" condition of the policy. Mot. at 23. Plaintiff states that he has acted in good faith regarding his claims, and that his statements are not contradictory. Opp'n. at 15. Because the Court has granted summary judgment regarding the HVAC claims above, the Court only addresses the Defendant's misrepresentation exception argument in regards to the second loss.

"Whether a false statement was in fact made is generally a question of fact to be decided by the jury." *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011). Courts have ruled on this issue in summary judgment where, in the cases cited by Defendant, a plaintiff admitted to lying about a material fact (*Ram*, 807 F. Supp. 2d at 853); a plaintiff completely made up a business transaction (*Cummings v. Fire Ins. Exchange*, 202 Cal. App. 3d 1407, 1415 (1988)); or a plaintiff completely made up a car crash (*Torralba v. National General Ins. Co.*, 2023 WL 8351566 (C.D. Cal. Nov. 20, 2023)). As discussed in each of those cases, summary judgment on this issue is only appropriate where the false statement is admitted or incontrovertible and central to the insured's claim. *See Ram*, 807 F. Supp. 2d at 854 ("whether a false statement was made knowingly and with

3:24-cv-01165-JES-MMP

the intent to deceive the insurer is usually a question of fact but may be decided as a matter of law where the insured admits that he made knowingly false statements with the intent that the insurer rely upon them."); *Cummings*, 202 Cal. App. 3d at 1417-18 (explaining that although generally the question of a statements falsity and intent is a question of fact, "[i]n the instant case, however, that issue need not be tried" because "plaintiff admits she was lying to the defendant and did so with the intent that defendant not find out the actual facts."); *Torralba*, 2023 WL 835166 at *4 (explaining that the making of a false statement is generally a jury question, but "can be decided as a matter of law, however, where a plaintiff admits to making false statements with the intent that the insurer rely on those statements.").

Here, Defendant argues that Plaintiff made a knowingly false statement that thieves had disconnected wires during the second loss, because Defendant's expert stated that he spoke with someone at the Irrigation District who said they disconnected the wires. Mot. at 25. Plaintiff argues that his statement was a speculative theory of how the loss occurred, which does not rise to the level of a false statement. Opp'n. at 15. Although Plaintiff's theory was contradicted by Defendant's expert, a jury could view his statement as speculation regarding the mechanism of the loss. *See Ram,* 807 F. Supp. 2d at 853. This statement therefore does rise to the level of incontrovertible or admitted falsity required to apply a misrepresentation exception as a matter of law. *See Torralba*, 2023 WL 835166 at *4. The Court **DENIES** Defendant's motion for summary judgment on the basis of the misrepresentation exception.

### F. Cooperation Clause

Defendant also argues that it is relieved of its ability to pay under the cooperation clause of its policy because Plaintiff failed to provide requested documents such as photos, records, and receipts. Mot. at 25. Plaintiff argues that he has cooperated throughout the process, and that Defendant has acted in bad faith. Opp'n. at 15.

To find that an insured breached a contract's cooperation clause as a matter of law, California law generally requires a showing that either (1) the insured refused to ever

submit to an exam under oath or (2) that "the insured was prejudiced in its investigation by the insured's failure to cooperate." *Martinez v. Infinity Ins. Co.*, 714 F. Supp. 2d 1057, 1061-62 (N.D. Cal. 2010). A failure to produce documents or a delay in sitting for an exam under oath does not show a breach of a cooperation clause as a matter of law. *Id.* at 1061. Here, Defendants claim relies on the failure to produce documents. Mot. at 25. Defendant does not argue that this failure prejudiced its investigation. *See id.* Further, Plaintiff did sit for an examination under oath. *See generally* ECF No. 38-20. Defendant has not met its burden to show that it is entitled to summary judgment on this issue. *See Martinez*, 714 F. Supp. 2d at 1061-61. The motion for summary judgment on the basis of the cooperation clause is **DENIED.**

### G. Covenant of Good Faith and Fair Dealing

Defendant argues that it is entitled to summary judgment on Plaintiff's claim of a breach of the implied covenant of good faith and fair dealing because it acted reasonably in handling Plaintiff's claims. Mot. at 26. Plaintiff contends that he has presented competent evidence to show that Nationwide acted unreasonably by misrepresenting the record and denying him coverage as a "conscious and deliberate act to unfairly frustrate the agreed purpose" of the insurance agreement. Opp'n. at 17. The Court finds that the record in this matter reflects that Defendant has engaged in good faith dispute regarding the terms and applicability of the contract, and is thus entitled to summary judgment on Plaintiff's implied covenant claim.

"To establish breach of the implied covenant, the insured must show that: (1) benefits due under the policy were withheld, and (2) such withholding was unreasonable." *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1115 (S.D. Cal. 2013) (citing *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151, 271 Cal.Rptr. 246 (1990). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made.*" *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). "That said, where breach of an actual term is alleged, a separate implied covenant

claim, based on the same breach, is superfluous and where an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." *Citizens Ins. Co. of Am. v. Chief Digital Advisors*, 578 F. Supp. 3d 1113, 1121 (S.D. Cal. 2020 (internal quotations omitted)). A good faith dispute in regards to the terms and applicability of a contract precludes a claim of breach of the covenant. *Keshish v. Allstate Ins. Co.*, 959 F.Supp.2d 1226, 1233 (C.D. Cal. 2013).

Because Plaintiff's claim of breach of contract survives summary judgment, Plaintiff will receive any benefits of the agreement actually made to which he is entitled following adjudication of the factual disputes in his claims. *See Guz*, 24 Cal.4th at 349. A good faith claim is therefore superfluous because it is based upon the same breach of obligations. *See Citizens Ins. Co.*, 578 F. Supp. 3d at 1121. Further, Defendant's denial of coverage is supported by its investigation and the reports of its experts, which it has supplied as evidence in this motion, supporting that its denial of coverage was made in good faith and precluding a claim of breach of the implied covenant. *See generally* Mot.; *Keshish*, 959 F. Supp. 3d at 1233. Thus, the Court **GRANTS** Defendant's motion for summary judgment of Plaintiff's claim for a breach of the covenant of good faith and fair dealing.

**H. Punitive Damages**

The parties agree that punitive damages are unavailable if an insurer has not acted in bad faith or with malice. *See* ECF No. 43 at 18; *American Casualty Co. of Reading, PA v. Krieger*, 181 F.3d 1113, 1123 (9th Cir. 1999). Defendant argues that Plaintiff has not provided evidence of malice, oppression, or fraud in its handling of Plaintiff's claims. Mot. at 30. Plaintiff argues that it has "repeatedly shown that Defendants misrepresentation of materials in the record […] has been an act of bad faith." Opp'n. at 18. This statement is conclusory. As explained above, the record reflects that Defendant's denial of coverage was based upon an investigation and the advice of its experts, not malice or oppression. Thus, the Court **GRANTS** Defendant's motion for summary judgment regarding punitive damages.

//

3:24-cv-01165-JES-MMP

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment on the basis that the HVAC system fell outside the terms of the Policy. The Court **DENIES** the motion on the basis that the electrical system fell outside the terms of the policy. The Court also **DENIES** the motion regarding the conditions and exclusions to the policy. The Court **GRANTS** Defendant's motion for summary judgment regarding Plaintiff's bad faith claim and claim for punitive damages.

**IT IS SO ORDERED**.

Dated: March 17, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

17

3:24-cv-01165-JES-MMP